UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CARIS MPI, INC. d/b/a CARIS LIFE SCIENCES, | § § § | |
| *Plaintiff,* | § § | |
| v. | § § | Civil Action No. 3:21-CV-3101-X |
| UNITEDHEALTHCARE, INC. et al., | § § § | |
| *Defendants.* | § § | |

## MEMORANDUM OPINION AND ORDER

UnitedHealthcare, Inc., United HealthCare Services, Inc., UnitedHealthcare Community Plan of Texas L.L.C., UnitedHealthcare Benefits of Texas, Inc., and Optum, Inc. (collectively, "United") removed this case from Texas state court. Displeased with federal court, Caris MPI, Inc. ("Caris") moves to remand. [Doc. 9]. United, on the other hand, moves to dismiss. [Doc. 15]. For the reasons below, the Court **DENIES** Caris's remand motion. Because Caris failed to exhaust its administrative remedies, the Court **DISMISSES WITHOUT PREJUDICE** Caris's claims and **FINDS AS MOOT** United's motion to dismiss.

### I. Background

United is a private health insurance company. Some of its sub-entities in this suit—UnitedHealthcare Benefits of Texas, Inc., for instance—also administer Medicare benefits pursuant to contracts with the Centers for Medicare & Medicaid

Services ("CMS").   Such entities are called Medicare Advantage Organization ("MAOs").

Caris conducts cancer diagnostic testing, and it operates as an out-of-network provider for United, meaning that no written contract governs the relationship between Caris and United.[1]   Sans such a contract, the parties have interacted "according to their longstanding course of dealings, representations . . . , and implied contracts."[2]   For example, Caris would generally (1) obtain preauthorizations from United, (2) provide services to United's insureds in reliance on those preauthorizations, and then (3) bill United for its services using agreed-upon billing codes.   United would then pay Caris for those services as billed.

In completing that third step, Caris used billing codes that remained the same regardless of whether United's private or Medicare Advantage plans covered the patient.   But in 2020, United began asserting that Caris had been using the wrong billing codes all along, seeking partial repayment for past claims, and eventually attempting to recoup that money by offsetting it against new claims from Caris.   Caris sued United in Texas state court.   United timely removed based on federal-officer jurisdiction, and Caris now moves to remand.   United also moves to dismiss.

Meanwhile, it became clear to the Court that United contended that Caris failed to exhaust its administrative remedies.   Concerned that a failure to exhaust

---

[1] At this stage, the Court "must initially resolve all disputed questions of fact . . . in favor of the non-removing party."   *Dodson v. Spiliada Maritime Corp.*, 951 F.2d 40, 42 (5th Cir. 1992).   Thus, the Court presents the facts here as alleged by Caris, the non-removing party.

[2] Doc. 1-31 at 2.

might deprive the Court of subject-matter jurisdiction, the Court ordered jurisdictional discovery and held an evidentiary hearing. At the hearing, witnesses testified to a variety of issues including administrative exhaustion and the connection between Medicare and the instant suit.

## II. Legal Standard

Concerning Caris's remand motion, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction[] may be removed by . . . the defendants" to federal court.[3] "[T]he burden of establishing federal jurisdiction is placed upon the party seeking removal."[4] Courts "strictly construe removal jurisdiction" because it "raises significant federalism concerns."[5]

Concerning jurisdiction, "subject matter jurisdiction is non-waivable and delimits the power of federal courts."[6] "[I]n examining a Rule 12(b)(1) motion, a district court is empowered to find facts as necessary to determine whether it has jurisdiction."[7] In some cases, a court may "lack[] subject matter jurisdiction [when a plaintiff] fail[s] to exhaust its administrative remedies prior to filing suit."[8]

---

[3] 28 U.S.C. § 1441(a).

[4] *Willy v. Coastal Corp.*, 855 F.2d 1160, 1164 (5th Cir. 1988).

[5] *Id.*

[6] *McDonal v. Abbott Labs.*, 408 F.3d 177, 182 (5th Cir. 2005) (cleaned up).

[7] *Trinity Home Dialysis, Inc. v. WellMed Networks, Inc.*, No. 22-10414, 2023 WL 2573914, at *2 (5th Cir. Mar. 20, 2023) (per curiam) (cleaned up).

[8] *Id.* at *5.

## III.  Analysis

The Court considers (A) Caris's remand motion and (B) subject-matter jurisdiction.

### A.  Remand Motion

United asserts one basis for federal jurisdiction—federal-officer jurisdiction. "[A]ny agency [] or any officer . . . of the United States" may remove a civil action against it to federal court so long as the action "relat[es] to any act under color of such office."[9]  Similarly, an entity "acting under" such an officer or agency[10] may avail itself of federal-officer jurisdiction only if it can show that "(1) it has asserted a colorable federal defense, (2) it is a 'person' within the meaning of the statute, (3) [it] has acted pursuant to a federal officer's directions, and (4) the charged conduct is connected or associated with an act pursuant to a federal officer's directions."[11] Unlike ordinary removal jurisdiction, "federal officer jurisdiction is not narrow or limited," and courts must "broadly construe the [officer-removal] statute in favor of a federal forum."[12]  Caris claims that remand is warranted because United fails on elements 1, 3, and 4.  Caris's challenge fails because each element is satisfied.

### 1.  Colorable Federal Defense

United has a colorable federal defense.  "[T]he defendants need not prove the asserted defense[] but need only articulate its 'colorable' applicability to the plaintiff's

---

[9] 28 U.S.C. § 1442(a)(1).

[10] *Id.*

[11] *Latiolais v. Huntington Ingalls, Inc.*, 951 F.3d 286, 296 (5th Cir. 2020) (en banc).

[12] *Trinity*, 2023 WL 2573914, at *2 (cleaned up).

claims."[13]  United asserts that Caris failed to exhaust its administrative remedies. As shown below, that's "plainly a colorable, and ultimately successful, federal defense."[14]

## 2.  Federal Officer's Directions

In general, MAOs contract with CMS to offer private insurance plans under Medicare Part C.  The parties agree that the issue here is whether United, "as a[] MAO, [] acts under the authority of CMS."[15]  "[A]n 'unusually close' relationship can satisfy the 'acting under' requirement if (1) the removing party engages in an effort to assist, or to help carry out, the duties or tasks of the federal superior, and (2) the federal officer exercises subjection, guidance, or control over the removing party."[16]

United acted under CMS's directions.  The Fifth Circuit recently held that a company that "assisted CMS in administering Medicare benefits on behalf of the federal government" had "a sufficiently close relationship [with CMS] . . . to satisfy the 'acting under' prong."[17]  Importantly, that company provided the services at issue only because "CMS . . . contract[ed] with UnitedHealthcare, and, in turn, UnitedHealthcare then subcontracted with [the company]."[18]  Because this is an even simpler case—in which CMS contracted directly with United—United acted under

---

[13] *Winters v. Diamond Shamrock Chem. Co.*, 149 F.3d 387, 400 (5th Cir. 1998), *holding modified on other grounds by Latiolais*, 951 F.3d at 296.

[14] *Trinity*, 2023 WL 2573914, at *2.

[15] Doc. 10 at 15; Doc. 19 at 13 (arguing that "MAOs act under the direction of a federal officer").

[16] *Trinity*, 2023 WL 2573914, at *3 (cleaned up).

[17] *Id.* at *3–4.

[18] *Id.* at *3.

CMS for purposes of federal-officer jurisdiction. Caris provides two counterarguments. Neither is persuasive.

First, Caris contends that "CMS allows MAOs free reign [*sic*] to decide how they operate."[19] And Caris cites a Sixth Circuit case holding that MAOs' "autonomy to utilize innovations of the private market in [Medicare Advantage] plan design and implementation indicates that MAOs are not closely supervised or controlled by CMS."[20] But the Fifth Circuit disagreed, concluding that CMS closely supervised a MAO subcontractor with "extensive detailed regulation, monitoring, and supervision."[21] The Court cannot rely on out-of-circuit authority to circumvent an on-point Fifth Circuit opinion.

Second, Caris contends that MAOs do not "perform a job that the government would have to perform itself but for its contract with MAOs."[22] Once again, Caris finds itself on the wrong side of a circuit split. Although the Sixth Circuit said the government wouldn't go into the MAO business itself—but would instead resort to normal Medicare—the Fifth Circuit disagreed, concluding that United's subcontractor "was performing obligations that CMS would have otherwise been required to provide."[23] The Court must follow the Fifth Circuit.

---

[19] Doc. 10 at 16 (cleaned up).

[20] *Ohio State Chiropractic Ass'n v. Humana Health Plan Inc.*, 647 F. App'x 619, 623 (6th Cir. 2016) (cleaned up).

[21] *Trinity*, 2023 WL 2573914, at *3 (cleaned up).

[22] Doc. 10 at 16.

[23] *Trinity*, 2023 WL 2573914, at *3.

### 3. Connection with Charged Conduct

"[A]ny civil action that is connected or associated with an act under color of federal office may be removed."[24]  Caris's original state-court petition described the billing codes at issue as "industry-standard billing codes ***set by Medicare***," so it seems that Caris acknowledges the connection between Medicare and this suit.[25] Although that language vanished from Caris's amended petition, the evidentiary hearing shored up the government's connection to this suit.  For instance, Jacob Kearney, Optum's lead consultant, testified that contracts between CMS and MAOs obligate MAOs to conduct post-pay audits to ensure claims are correctly paid and to remedy improper payments—exactly the events that generated the dispute here. Kearney also testified that, during that audit, United checked documents from providers—like Caris—against CMS standards for coding claims.  Further, Kearney testified that CMS guidelines and regulations allow MAOs, upon finding a billing discrepancy, to offset any past excess payment against future claims in order to recoup funds—exactly what happened here.  And Caris provided no facts to the contrary.  Based on that testimony, the Court finds that the charged conduct has a connection with an act under color of federal office.

Because the four elements are satisfied, the Court has federal-officer jurisdiction over this action.  Accordingly, the Court **DENIES** Caris's remand motion.

---

[24] *Latiolais*, 951 F.3d at 296.

[25] Doc. 1-5 at 7 (emphasis added).

## B. Administrative Exhaustion

Although United didn't file a Rule 12(b)(1) motion, the Court may consider its jurisdiction *sua sponte*.[26]   Even when "removal jurisdiction [is] proper," a court may still "lack[] subject matter jurisdiction [when a plaintiff] fail[s] to exhaust its administrative remedies prior to filing suit."[27]   "[T]he Medicare Act contains an exhaustion requirement."[28]   Specifically, "a party may not bring suit in federal court to challenge an organization determination until it has exhausted its administrative remedies."[29]   So if this case involves an "organization determination" and Caris didn't exhaust its administrative remedies, then the Court lacks subject-matter jurisdiction.

First, this case involves an "organization determination."   The Fifth Circuit recently held that "organization determinations" include "determinations" that "[MAOs] must make" regarding "at what rate certain claims may be reimbursed."[30] Caris's dispute concerns the rate at which United decided to reimburse Caris's claims. Accordingly, this case involves United's "organization determination."

Second, Caris didn't exhaust its administrative remedies.   Exhaustion occurs "only after a party first presents the claim to the Secretary [of the Department of Health and Human Services] and receives a final decision."[31]   But Caris agrees that,

---

[26] *McDonal*, 408 F.3d at 182 n.5.

[27] *Trinity*, 2023 WL 2573914, at *5.

[28] *Id.*

[29] *Id.*

[30] *Id.* at *1.   Caris concedes that "the *Trinity* opinions were correctly decided," so it has waived any argument that *Trinity* was wrongly decided.   Doc. 57 at 1.

[31] *Physician Hosps. of Am. v. Sebelius*, 691 F.3d 649, 653 (5th Cir. 2012).

8

here, the parties "did not use . . . the Medicare appeals process," and instead Caris used United's "private appeal path."[32]  So Caris didn't exhaust.

Because Caris didn't exhaust its administrative remedies and because it had to do so to bring this suit involving an "organization determination," the Court lacks subject-matter jurisdiction over Caris's claims against United.

Caris raises two counterarguments.  First, it asserts that a claim doesn't "arise under" Medicare unless a Medicare "enrollee []or the government has an interest in the [] dispute."[33]  That's wrong.  Without examining enrollee or governmental interests, the Fifth Circuit said that "claims for failure to reimburse . . . clearly arise under the Medicare Act."[34]

Second, Caris contends—sans citation to any evidence—that United "could not" "shift [] recoupment costs to enrollees."[35]  Here's why that might matter: The Fifth Circuit previously found that a dispute did not arise under Medicare where the provider had a contract with the insurance company that expressly "waived its right to payment from enrollees" such that those enrollees were "not at risk of being billed for the services that [the plaintiff] provided them."[36]  But that's not the situation here. Notably, Caris doesn't cite any such contractual waiver.  Nor could it.  As Caris

---

[32] Doc. 42 at 14.

[33] *Id.* at 16.

[34] *Trinity*, 2023 WL 2573914, at *5.  And Caris has waived any argument that the Fifth Circuit got that wrong because Caris concedes that "*Trinity* was correctly decided."  Doc. 42 at 23.

[35] Doc. 42 at 24.

[36] *RenCare, Ltd. v. Humana Health Plan of Tex., Inc.*, 395 F.3d 555, 558 (5th Cir. 2004).

concedes in its petition, "the Parties do not have a written contract governing their relationship."[37]  So, as the Court previously held, where parties do not have a contract that "include[s] a waiver of [a provider's] right to seek payment from the enrollees themselves" and cannot "point to anything in the record reflecting such a waiver," the Fifth Circuit's rule in a case involving express waiver is inapposite.[38]

## IV.  Conclusion

For the foregoing reasons, the Court **DENIES** Caris's remand motion.  But because Caris failed to exhaust its administrative remedies, the Court **DISMISSES WITHOUT PREJUDICE** Caris's claims against United.  In light of that dismissal, the Court **FINDS AS MOOT** United's motion to dismiss.

**IT IS SO ORDERED** this 26th day of July, 2023.

BRANTLEY STARR
UNITED STATES DISTRICT JUDGE

---

[37] Doc. 1-31 at 2.

[38] *Trinity Home Dialysis, Inc. v. WellMed Networks, Inc.*, No. 3:20-CV-02112-X, 2022 WL 837495, at *5 (N.D. Tex. Mar. 21, 2022), *aff'd*, 2023 WL 2573914; *see also Trinity*, 2023 WL 2573914, at *4 n.3 ("*Rencare* is distinguishable on several grounds.  Unlike here, the parties in *Rencare* had an express contractual agreement to provide services.").