UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| CARIS MPI, INC. d/b/a CARIS LIFE SCIENCES, § § § *Plaintiff,* § § v. § § UNITEDHEALTHCARE, INC. et al., § § *Defendants*. § | Civil Action No. 3:21-CV-3101-X |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants UnitedHealthcare, Inc., United Healthcare Services, Inc., UnitedHealthcare Community Plan of Texas, L.L.C., United HealthCare Benefits of Texas, Inc., and Optum, Inc.'s (collectively, "Defendants" or "United") motion to dismiss Plaintiff Caris MPI, Inc. d/b/a Caris Life Sciences' (Caris) first amended complaint.[1]  (Doc. 15).  After reviewing the briefing, the Court **GRANTS IN PART AND DENIES IN PART** the motion to dismiss, and **GRANTS IN PART** Caris's request for leave to amend.

### I.  Background

United is a private insurance company that provides health insurance through the Medicare Advantage program and through private insurance plans.  Caris is a private healthcare provider that provides diagnostic services to cancer patients. Caris is not a network provider under United's insurance plans, but United has

---

[1] The motion is to dismiss Caris's First Amended Petition, filed in state court prior to removal. *See generally* Docs. 1 and 1-31.  This petition will be referred to as the First Amended Complaint for the purposes of this order.

covered Caris's services under certain plans for about a decade. Caris would obtain preauthorization from United for certain services, provide patients with those medical services, and bill the services to a particular set of billing codes, and then United would pay the bill.

Then in 2020, United began recouping money from Caris for services provided to United's insureds, which United had previously authorized and paid for. Caris disputed the recoupment and sued United in Texas state court for a variety of state claims based on the parties' business relationship. Caris seeks recovery for amounts provided under multiple types of ERISA-exempt plans, including individual commercial plans, commercial Exchange plans, Medicare Advantage plans, Medicaid plans, governmental plans, church plans, and voluntary plans.

United removed the case to federal court and filed the present motion to dismiss. The Court previously dismissed Caris's claims on grounds outside this motion, but the Fifth Circuit reversed and remanded the case back to this Court. The Court now reopens the motion to dismiss and considers the remaining arguments.

## II.  Legal Standard

A Rule 12(b)(6) motion challenges a pleading for a "failure to state a claim upon which relief can be granted."[2] A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."[3] When analyzing the pleadings under a Rule 12(b)(6) motion, the complaint must contain "only enough

---

[2] Fed. R. Civ. P. 12(b)(6).

[3] Fed. R. Civ. P. 8(a)(2).

2

facts to state a claim to relief that is plausible on its face."[4] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference the defendant is liable" for the claim alleged.[5] The Court will accept all well-pleaded factual allegations as true, but need not accept legal conclusions or threadbare recitals of elements as true.[6]

### III. Analysis

This motion presents two challenges to Caris's claims: (1) the claims are preempted by the Medicare Act; and (2) the complaint fails to state any claim under Rule 12(b)(6).[7] The Court takes each challenge in turn.

### A. Preemption by Medicare Act

The Medicare program, created by the Medicare Act,[8] is administered by the Center for Medicare and Medicaid Services (CMS), a division within the Department of Health and Human Services.[9] As the Fifth Circuit helpfully laid out,

> Congress created the Medicare Advantage program, also known as Medicare Part C, as an alternative to traditional Medicare. [Medicare Advantage] gives enrollees the choice to obtain benefits through private insurance companies rather than from the government. Private companies that insure Medicare Advantage enrollees are called Medicare Advantage Organizations.[10]

---

[4] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[5] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[6] *Id.* at 678–79.

[7] Fed. R. Civ. P. 12(b)(6).

[8] 42 U.S.C. §§ 1395–1395lll.

[9] *See, e.g.*, *RenCare, Ltd. v. Humana Health Plan of Texas, Inc.*, 395 F.3d 555, 556 (5th Cir. 2004).

[10] *Caris MPI, Inc. v. UnitedHealthcare, Inc.*, 108 F.4th 340, 343 (5th Cir. 2024) (cleaned up).

In relation to the Medicare Advantage program, the Medicare Act includes the following language: "The standards established under this part shall supersede any State law or regulation . . . with respect to [Medicare Advantage] plans which are offered by [Medicare Advantage] organizations under this part."[11]

United is a Medicare Advantage Organization. United argues that Caris's state law claims, to the extent they pertain to services covered under a Medicare Advantage plan, are preempted by the Medicare Act because the conduct forming the basis for Caris's claims is subject to Medicare Act regulations for "a non-contracted provider, like [Caris]."[12] Caris argues that this is a private payment dispute between a provider (Caris) and a Medicare Advantage Organization (United), outside the preemption scope of the Medicare Act.

The Fifth Circuit has not yet ruled on whether the Medicare Act preempts state law claims based on an implied-in-fact contract.[13] But it is well established in the Fifth Circuit that "[f]ederal preemption is an affirmative defense that a defendant must plead and prove."[14]

United's preemption defense hinges on a factual analysis of a record that is not yet developed. Whether or not Caris's claims are preempted hinges on, among other things, whether an implied contract existed between Caris and United. This is the central dispute in this lawsuit, and it consists of a labyrinth of factual questions that

---

[11] 42 U.S.C. § 1395w-26(b)(3).

[12] Doc. 16 at 5.

[13] *See Caris*, 108 F.4th at 346.

[14] *See, e.g.*, *Fisher v. Halliburton*, 667 F.3d 602, 609 (5th Cir. 2012) (collecting cases).

the Court will not venture down at this stage. Because the Court will not undertake a factual inquiry at the pleadings stage, the Court **DENIES** United's motion to dismiss as to preemption.[15]

### B.    Rule 12(b)(6) Challenge

United also claims Caris fails to state a claim for five of its six claims under Rule 12(b)(6). United does not challenge Caris's claim for declaratory judgment to the extent it is based on ERISA-exempt plans. The Court considers each of the challenged claims in turn.

### 1.    Breach of Implied Contract

"To state a claim for breach of an implied contract, a plaintiff must plead the existence of a valid implied contract, performance or tendered performance by the plaintiff, breach of the implied contract by the defendant, and damages resulting from the breach."[16] "Under Texas law, the elements of a contract, express or implied, are identical."[17] The difference between the two lies "in the character and manner of proof required to establish them."[18] "The elements of either type of contract are (1) an offer, (2) an acceptance, (3) a meeting of the minds, (4) each party's consent to the

---

[15] Here, the federal-preemption defense is not clear on the face of the Complaint, as in other cases where federal-preemption may be the proper subject of a Rule 12(b)(6) motion to dismiss. *See Fisher v. Halliburton*, 667, F.3d 602, 609 (5th Cir. 2012).

[16] *Electrostim Med. Servs., Inc. v. Health Care Serv. Corp.*, 614 F. App'x 731, 744 (5th Cir. 2015).

[17] *Id.* (cleaned up).

[18] *Id.*

terms, and (5) execution and delivery of the contract with the intent that it be mutual and binding."[19]

United argues that Caris failed to allege a meeting of the minds as to the terms of the alleged contract or the amount Caris was entitled to, and that Caris cannot meet this element by alleging a course of dealing without more.  Caris argues that it has met its pleading burden and that mutual assent is a question of fact improper for a motion to dismiss.  The Court agrees with Caris.

As to the existence of an implied contract, Caris alleges a course of dealing that spans a decade, involving "a rigorous preauthorization process before rendering any services."[20]  Caris alleges that it submitted payment requests only after obtaining preauthorization from United and providing the authorized services.  Caris alleges "[f]or almost ten years, Caris used the same set of billing codes and Defendants paid for those services according to their agreed out-of-network rate."[21]  Further, Caris alleges that, for years, "Defendants continued to grant prior authorization and pay for Caris'[s] services as billed," and never directed Caris to use different billing codes or provide supporting records.[22]  "In the case of an implied contract, . . . mutual assent is inferred from the circumstances."[23]  This inference is best suited for the fact finder, not for a motion to dismiss.  Taking all well-pled facts as true, the Court finds

---

[19] *E.g., id.*

[20] Doc. 1-31 at 8.

[21] Doc. 1-31 at 8.

[22] Doc. 1-31 at 8.

[23] *Fisher v. Blue Cross & Blue Shield of Tex., Inc.*, No. 3:10-cv-2652-L, 2015 WL 5603711, at *10 (N.D. Tex. Sept. 23, 2015) (Lindsay, J.) (cleaned up) (citing *Mann Frankford Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 850 (Tex. 2009)).

that Caris has met its burden under Rule 8 in pleading the existence of an implied contract.

Though United cites case law for the proposition that "preauthorization is not sufficient to create an implied-in-fact contract,"[24] this case law is distinguishable and Caris has pled more than preauthorization. Caris alleges that United granted preauthorization, paid Caris for the claims, and only then disputed the payments and began to recoup the disputed amounts. This is distinct from *Electrostim Medical Services, Inc. v. Health Care Service Corp.*, the only Fifth Circuit precedent cited by United.[25] There, the plaintiff's only allegation in support of an implied contract was that, "if [Plaintiff] provided [Defendant]'s insureds with covered services and products, [Defendant] would pay [Plaintiff] for its claims based on those covered services and products."[26] Here, Caris alleges that the parties had an established course of dealing of authorization, performance, and then payment—not preauthorization alone.

For the remaining elements, Caris alleges that United breached the implied contract when United claimed it had overpaid by over $5 million and began recouping this amount through offsets on Caris's accounts receivable. Caris alleges damages amounting in over $2 million from United's offsets. The Court finds that Caris has stated facts sufficient to allege a plausible claim for breach of implied contract. The Court **DENIES** United's motion to dismiss Caris's breach of implied contract claim.

---

[24] Doc. 16 at 17.

[25] 614 F. App'x at 744.

[26] *Id.*

## 2. Theft of Services

The Texas Theft Liability Act provides a civil remedy for theft.[27] The definition of "theft" is provided by the Texas Penal Code.[28] A claim for theft of service requires Caris to prove United "with intent to avoid payment for service that [United] knows is provided only for compensation . . . intentionally or knowingly secure[d] the performance of the service by agreeing to provide compensation and, after the service [was] rendered, fail[ed] to make full payment after receiving notice demanding payment."[29]

United argues the claim is insufficient because Caris has failed to allege that United did not intend to pay when Caris rendered the services. Caris claims that intent can be established later and that intent can be presumed. The Court agrees with United.

Intent to avoid payment is presumed if United "had failed to make payment under a service agreement within 10 days after receiving notice demanding payment."[30] While the statue does provide for this presumption, the facts to support that presumption must be plead. Caris alleges that United accepted the services, secured Caris's performance by agreeing to pay, and then refused to pay after receiving notice of payment due. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" do not meet the Rule 8 "short and

---

[27] Tex. Civ. Prac. & Rem. Code §§ 134.001–.005.

[28] *Id.* § 134.002.

[29] Tex. Pen. Code § 31.04(a)(4).

[30] *Id.* § 31.04(b)(2).

plain statement" requirement.[31] The complaint includes no allegations as to United's intent at the time of securing Caris's services, and as to presuming intent, the complaint does not include sufficient factual allegations as to when services were rendered and when Caris provided a notice demanding payment was provided to United.

Therefore, the Court **GRANTS** the motion to dismiss as to Caris's theft of services claim, but also **GRANTS** Caris's motion for leave to replead. Caris may file an amended complaint within 28 days of the date of this order alleging facts specific to Defendants' intent, including facts relevant to the presumption provided for by Texas Penal Code section 31.04(b)(2), notices of payment (if any), the timing of such notices, and Defendants refusal (if any) of such notices.

### 3. Unjust Enrichment

Unjust enrichment is a theory of equitable recovery. "Texas appellate courts appear split on whether unjust enrichment is an independent cause of action."[32] Sometimes, courts refer to it like an independent claim,[33] but others deem it merely a theory of liability, "not . . . a separate and distinct claim."[34] For the purposes of this motion to dismiss, the Court will assume unjust enrichment can provide the basis for a valid claim. A plaintiff may recover under the theory

---

[31] *Ashcroft*, 556 U.S. at 678; Fed. R. Civ. P. 8(a)(2).

[32] *In re Connect Transport, LLC*, 825 F. App'x 150, 154 n.2 (5th Cir. 2020).

[33] *See, e.g.*, *Elledge v. Friberg-Cooper Water Supply Corp.*, 240 S.W.3d 869, 871 (Tex. 2007) (discussing the statute of limitations for unjust enrichment claims); *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 550 (5th Cir. 2010).

[34] *Hancock v. Chi. Title Ins. Co.*, 635 F. Supp. 2d 539, 560 (N.D. Tex. 2009) (Fitzwater, C.J.) (collecting cases).

when one person has obtained a benefit from another by fraud, duress, or the taking of an undue advantage. Unjust enrichment characterizes the result of a failure to make restitution of benefits either wrongfully or passively received under circumstances that give rise to an implied or quasi-contractual obligation to pay.[35]

The parties dispute whether claims of unjust enrichment are recognized against insurers. United argues that it did not benefit from Caris's services, its insured patients did; while Caris argues that United benefited passively by retaining money it owed to Caris. The Court agrees with United.

Caris's complaint alleges that United "accepted money from their insureds and agreed to pay that money" to service providers and that United is "unjustly enriched by receiving money from [its] insureds and then refusing to pay that money to Caris for the provision of testing services."[36] While Caris has alleged that United received premium payments covering all plan benefits for its insured, Caris has not alleged any benefit retained by or passively conveyed to United. If anything, based on the alleged course of dealing, United, as the insurer, acquired a debt upon Caris's performance of the services. Therefore, the Court **GRANTS** the motion to dismiss as to Caris's unjust enrichment claim. Because there are no facts that Caris could plead to demonstrate a benefit conveyed to United, Caris's request for leave to amend is **DENIED** as to this claim.

---

[35] *Sullivan*, 600 F.3d at 550 (cleaned up).

[36] Doc. 1-31 at 16.

### 4. Conversion

The Defendants argue that Caris does not have a viable conversion claim because it is a claim for money based on a debt owed, not tangible property. Caris disagrees and argues that its conversion claim is based on the tangible property of accounts receivable, alleging the funds can be traced to particular funds in the Defendants' possession. The Court agrees with the defendants but will allow Caris to amend its complaint and replead this claim.

Conversion is the "unauthorized and wrongful assumption and exercise of dominion and control over the personal property of another, to the exclusion of or inconsistent with the owner's rights."[37] The elements of a conversion claim are:

> (1) the plaintiff owned, had legal possession of, or was entitled to possession of the property; (2) the defendant assumed and exercised dominion and control over the property in an unlawful and unauthorized manner, to the exclusion of and inconsistent with the plaintiff's rights; and (3) the defendant refused plaintiff's demand for return of the property.[38]

"Actions for conversion of money are available in Texas only where money is (1) delivered for safekeeping; (2) intended to be kept segregated; (3) substantially in the form in which it is received or an intact fund; and (4) not the subject of a title claim by the keeper."[39]

---

[37] *Waisath v. Lack's Stores, Inc.*, 474 S.W.2d 444, 447 (Tex. 1971).

[38] *Robin Singh Educ. Servs., Inc. v. Test Masters Educ. Servs., Inc.*, 401 S.W.3d 95, 97 (Tex. App.—Houston [14th Dist.] Mar. 8, 2011, no pet.).

[39] *In re TXNB Internal Case*, 483 F.3d 292, 308 (5th Cir. 2007) (cleaned up) (citing *Edlund v. Bounds*, 842 S.W.2d 719, 727 (Tex. App.—Dallas 1992, writ denied)).

While Caris cites cases it claims to involve conversion claims for accounts receivable,[40] the Court does not find these cases convincing. The court in *Bancroft Life & Casualty* dismissed the claim for conversion of loan interest and principal for insufficient pleading of the elements of conversion for money—the same elements required here.[41] In *Newsome*, the court found a bank was not liable for conversion where the bank complied with a writ of garnishment, holding that only funds specified in the writ were specific chattel for purposes of the money conversion claim.[42] These cases don't support Caris's proposition that its claim for conversion based on its generic accounts receivable can stand.

Though it may involve accounts receivable, Caris's claim for conversion is one for money. Caris does not plead the elements for a conversion claim of money. Caris only presents the mere conclusory statement that the money can be traced to specific funds. Caris does not plead specific accounts or funds that could be the basis for its conversion claim; it does not plead the money was delivered to any of the Defendants for safekeeping, nor that it was intended to be kept segregated or is still intact. Therefore, the Court **GRANTS** United's motion to dismiss as to Caris's conversion claim, but also **GRANTS** Caris leave to amend its complaint as to its conversion claim. Caris may replead facts specific to traceable funds or accounts it claims to be converted.

---

[40] *See* Doc. 23 at 21 (citing *Bancroft Life & Cas. ICC, Ltd. v. GRBR Ventures, L.P.*, 12 F.Supp.3d 980 (S.D. Tex. 2014); *Newsome v. Charter Bank Colonial*, 940 S.W.2d 157 (Tex. App.—Houston [14th Dist.] 1996, writ denied)).

[41] *Bancroft Life & Cas.*, 12 F.Supp.3d at 990–92.

[42] *Newsome*, 940 S.W.2d at 164.

### 5. Estoppel and Quasi Estoppel

Caris pled "Estoppel and Quasi Estoppel" as one count in its First Amended Petition.[43] The defendants argue neither claim is a freestanding cause of action or an affirmative claim. In its response to the motion at bar, Caris argues that it "pled estoppel in order to hold Defendants to the services they induced," but then provides the elements of promissory estoppel.[44]

Equitable estoppel is an affirmative defense, not an independent cause of action.[45] Similarly, quasi estoppel "is not a freestanding cause of action but a procedural device or affirmative defense."[46] Caris did not plead an affirmative cause of action, so the Court **GRANTS** the motion to dismiss on this claim. And because Caris did not identify an affirmative cause of action in its complaint, the Court **DENIES** leave to amend as to this claim.

### C.   Leave to Amend

Caris has amended its pleadings once, prior to removal to federal court. The Court **GRANTS IN PART** Caris's motion for leave to amend its complaint as specified in this Order. Caris may amend its complaint within 28 days to make plausible allegations of theft of services and conversion.

---

[43] Doc. 1-31 at 17.

[44] Doc. 23 at 22.

[45] *See, e.g.*, *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 156 n.1 (Tex. 2004) ("Equitable estoppel is not a cause of action but may be asserted as a defensive plea to bar a defendant from raising a particular defense.").

[46] *Gil Ramirez Group, L.L.C. v. Houston Indep. Sch. Dist.*, 786 F.3d 400, 414 (5th Cir. 2015).

## IV. Conclusion

For the above reasons, the Court **GRANTS IN PART AND DENIES IN PART** United's motion to dismiss.  The Court **DISMISSES WITH PREJUDICE** Caris's unjust enrichment claim and estoppel/quasi-estoppel claim.  The Court **DISMISSES WITHOUT PREJUDICE** Caris's theft of services and conversion claim and **GRANTS** Caris 28 days to replead to make plausible allegations as specified in this order.

**IT IS SO ORDERED** this 21st day of March, 2025.

_____
BRANTLEY STARR
UNITED STATES DISTRICT JUDGE